UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
11/02/2022

**In re:**
    **Alan Elias,**
        **Debtor.**

**Chapter 13**
**Case # 20-10334**

*Appearances:*  Rebecca A. Rice, Esq.                  Sara M. Buchanan, Esq.
                 Cohen & Rice                          Bendett & McHugh, P.C.
                 Rutland, Vermont                   Farmington, Connecticut
                 For the Debtor                          For U.S. Bank

### MEMORANDUM OF DECISION AND ORDER SETTING U.S. BANK'S LIEN AMOUNT

On November 24, 2021, this Court confirmed Alan Elias' Chapter 13 Plan dated April 30, 2021 (the "Plan"), subject to a determination as to the amount of the secured debt owed on real property located at 3261 Route 30N, Bomoseen, Vermont so that the property could be sold. The Court held an evidentiary hearing on this contested matter on October 11, 2022, and took the matter under advisement. For the reasons set forth below, the Court finds that the Bank holds a lien on the property in the amount of $232,395.21.

### JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. The Court declares this contested matter to be a core proceeding according to 28 U.S.C. § 157 (b)(2)(B), (L) and (O), over which this Court has constitutional authority to enter a final judgment.

### PROCEDURAL HISTORY

Alan Elias, (the "Debtor") filed this chapter 13 case on October 28, 2020 (the "Commencement Date") (doc. # 1), filed a chapter 13 plan on November 30, 2020 (doc. # 14) and filed amended plans on March 5, 2021 (doc. # 38), April 27, 2021 (doc. # 43), and April 30, 2021 (doc. # 44). U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT (the "Bank"), filed an objection to confirmation of the Plan on January 20, 2021 (doc. # 24), and supplements to that objection on February 23, 2021 (doc. # 36), and March 18, 2021 (doc. # 40). In the Plan, the Debtor acknowledged the Bank's claim in the

amount of $36,430.54 (doc. # 44).[1] The Bank objected, claiming that the Plan knowingly did not provide the adequate payment on its secured claim (doc. ## 24, 36, 40).[2] The Court confirmed the Plan over the objection of the Bank, subject to a determination of the amount of the Bank's lien.

Prior to the Commencement Date, the Debtor had a previous chapter 13 case in this Court (ch. 13 #14-10011) (the "2014 Case"). The 2014 Case was not closed until approximately one month after the Commencement Date (doc. # 238) and the ultimate modification of the Debtor's chapter 13 Plan was granted on August 11, 2020 (doc. ##226 and 227), with the consent of the Bank (*see* docket entry of August 11, 2020). The Debtor's confirmed Plan in the 2014 Case recognized the Bank's claim as $232,865.00 amortized over thirty (30) years at 4% interest per annum with payments to be made outside the plan once the plan was completed (docs. ##112, 129). The August 2020 modification contained a stipulation between the Debtor and the Bank that the Debtor was deemed current on his obligations through April 2018 (doc. # 227). It is undisputed in the current case that the Chapter 13 Trustee's Final Report and Account (doc. #235), as approved by the Court in the 2014 Case (doc. #236), accurately reflects payments made to the Bank during the 2014 Case and they were applied to the loan.

For the reasons set forth in the record, the Bank has not filed a proof of claim in the current case, although both cases involved the same loan at issue: a September 22, 2004, loan in the original principal amount of $170,000 secured by real property located at 3261 Route 30 North, Bomoseen, Vermont (the "Property"). Discovery has been ongoing between the Bank and the Debtor and the primary issue before the Court concerns the outstanding balance of the Bank's lien.

On October 11, 2022, the Court held an evidentiary hearing at which Rebecca A. Rice, Esq. appeared on behalf of the Debtor, Sara M. Buchanan, Esq. appeared on behalf of the Bank, and Jan. M. Sensenich, Esq. appeared as the Trustee. The Debtor and Nik Fox, Contested Case Manager for Selene Finance LP, the Bank's current loan servicer, appeared and testified in support of their respective positions.

---

[1] In the current case and the 2014 Case (defined below), the Debtor has intermittently referred to the servicers of the underlying loan at issue rather than the holder. While the note and mortgage at issue have gone through several assignments, the uncontroverted evidence in this case demonstrates that U.S. Bank (as defined herein) is the holder of the note evidencing the underling loan (doc. # 116 at 00:02:00 – 00:08:09). For ease of reference, the Court refers to all as the Bank throughout.

[2] In its Objection to Confirmation of Plan (doc. # 40), the Bank detailed the efforts between the parties to clarify the amounts owed to the Bank and argued that the Plan was not proposed in good faith and knowingly misrepresented the amounts owed.

2

**DISCUSSION**

The primary legal issue presented in this contested matter is what role, if any, the Debtor's confirmed Plan and subsequent August 2020 modification in the 2014 Case plays in determining the amount of the Bank's lien in the current case.

**A. The 2014 Case**

Section 1327(a) of the Bankruptcy Code is unequivocal: "The provisions of a confirmed plan bind the debtor and each creditor, . . . whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a); *Celli v. First National Bank of Northern New York (In re Layo),* 460 F.3d 289, 293 (2d Cir.2006). "Under § 1327, a confirmation order is *res judicata* as to all issues which were decided, or could have been decided, at the hearing on confirmation." *In re Whelton*, 299 B.R. 306, 314 (Bankr. D. Vt. 2003). There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of the order. *Layo*, 460 F.3d at 293.

This Court has consistently held that *res judicata* bars the reopening of claims that this Court has or could have decided at a chapter 13 confirmation hearing. *See id.*; *In re Crowley*, 258 B.R. 587, 591 (Bankr. D. Vt. 2000). One of the primary purposes of a chapter 13 plan is to conclusively set forth the treatment of claims. See § 1322(a)–(b); *see generally In re Loper*, 222 B.R. 431, 435 (D. Vt. 1998) ("In Chapter 13 [cases], the debtor is allowed to adjust the amount and the timing of the repayment of his/her indebtedness to secured and unsecured creditors in a repayment plan. The repayment plan is subject, however, to confirmation by the Bankruptcy Court.").

In the 2014 Case, the Plan reflects an agreement between the Debtor and the Bank on the amount of the Bank's claim: $232,865.00 amortized over thirty (30) years at 4% interest per annum with payments to be made outside the Plan once the Plan was completed (docs. ##112, 129). The August 2020 modification, which was approved by the Court, contained a stipulation between the Debtor and the Bank that the Debtor was to be deemed current on his obligations through April 2018 (doc. # 227). It is undisputed that the Bank received payments totaling $89,447.06 during the 2014 Case, which is contained in the Chapter 13 Trustee's Final Report and Account (doc. #235), as approved by the Court (doc. #236). The Debtor testified he has not made any payments directly to the Bank since the 2014 Case.

3

As the Plan proponent, the Debtor carries the initial burden of production and final burden of persuasion on all elements of plan confirmation. *See In re Hill,* 268 B.R. 548, 552 (B.A.P. 9th Cir. 2001). In his current plan, the Debtor only recognizes the Bank's claim in the amount of $36,430.54 (doc. #44), acknowledging the amount the Bank paid in real estate taxes during the 2014 Case (doc. #111 at ¶15). His initial schedules include a disputed claim in the amount of $157,055.27 (doc. #1). The Debtor testified that he cannot tell what he paid or what is owed (doc. #111 at ¶¶13-14).

Admittedly, the Bank (and its servicers) added to the confusion with various amounts included in the pleadings in this case and in statements sent to the Debtor (doc. #40). However, they do not alter the *res judicata* effect of the August 2020 stipulated modification to the Plan in the 2014 Case, which predates the Commencement Date by approximately two months. The Debtor was deemed current through April 2018 under the agreed upon amortization schedule in the Debtor's confirmed plan (doc. # 227). Those terms bind the Debtor and the Bank. *See* §1327(a); *In re Whelton*, 299 B.R. at 314. The Debtor, who has owned multiple pieces of income producing real estate, also recognizes that the amount due to the Bank should include the real estate taxes advanced during the 2014 Case (doc. # 111 at ¶15; doc. #1).

### B. Equitable Relief

The Trustee and the Debtor ask the Court to invoke its equitable powers to reduce the amount claimed by the Bank under §105 of the Bankruptcy Code. The Debtor asserts that based upon the statements he received from the prior servicer during the pendency of the 2014 Case, which reflected a balance due of $1,061.02, that his obligations to the Bank should be limited to that amount. However, in his plan and his declaration, he "agrees" to pay $36,430.54 based upon the taxes he knows the Bank paid during the pendency of the 2014 Case. On his Schedule of Assets and Liabilities filed in this case, the Debtor lists a disputed liability of $157,055.27 (doc. # 1). The amount of the Bank's lien was previously and conclusively determined in the 2014 Case and thus, the Debtor may not reopen those terms. *See* 11 U.S.C. § 1327(a); *In re Layo,* 460 F.3d at 293.

While §105 empowers this Court to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code, §105 does not allow the Court "to override explicit mandates of . . . the Bankruptcy Code." *Law. v. Siegel*, 571 U.S. 415, 421 (2014) (quoting 2 Collier on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013)); *In re Whelton*, 299 B.R. at 314. The plain language of the Bankruptcy Code in §1327(a) precludes equitable relief.

4

### C. Calculation of the amount of the Bank's Lien

The Bank claims it is owed $232,395.21, including a pre-petition arrearage of $25,710.44 (doc. #33). Although the Bank has not filed a proof of claim and thus, does not have an allowed claim, *see* Fed. R. Bankr. P. 3002(a), the Bank retains its lien on the Property. *See* §506(d); *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

Mr. Fox, Contested Case Manager for Selene Finance LP, the Bank's current loan servicer, testified the Bank complied with the stipulated modification terms and that the Debtor was brought current through April 2018 with the application of the $57,809.96 received from the Trustee. Mr. Fox also testified that all taxes from 2014-2018 were cleared from the loan and the application of the Trustee's $57,809.96 payment rendered the Debtor current through April 2018.

Based upon the Plan treatment in the 2014 Case and as reiterated in the modification, the parties agreed that the Bank's claim as of January 2014 was $232,865.00 to be amortized over 30 years at 4% per annum (docs. ##112, 129). The loan was not satisfied in the 2014 Case and the Debtor was to resume payments directly to the Bank as was set forth in the Plan (Id.). The Debtor testified he did not resume making payments.

Using the Parties' stipulated amortization of the loan, the amount of unpaid principal and interest as of April 2018 totaled $214,246.88. Mr. Fox testified that thereafter, the Bank applied the $31,633.80 received from the Trustee to the subsequent nineteen (19) monthly payments of $1,638.98, which included a principal and interest payment of $1,111.73 and escrow of $527.23,[3] which brought the loan current to January of 2020, with an unpaid principal and interest balance of $205,613.49, based upon the agreed amortization schedule.

Mr. Fox further testified that the Loan continued to accrue interest at the agreed upon rate of 4% per annum between January 1, 2020, and the Commencement Date. In addition, the Bank had advanced roughly $20,000 in real estate taxes on behalf of the Debtor. Based upon the testimony presented on the record in this case, as of the Commencement Date the Bank's lien is $232,395.21, representing the unpaid principal and interest, accrued interest, and escrow advances.

The Debtor, in his declaration and during his testimony, could not testify as to what he paid or what is owed to the Bank and offered no evidence controverting the Bank's calculations. It is undisputed that the Debtor did not make any direct payments to the Bank after the 2014 Case and

---

[3] The monthly payments and allocations made comply with the terms of the Plan in the 2014 Case (docs. ## 112, 129, 226, 227).

5

that the Bank has received no payments during the pendency of this case. He recognized, however, that he had also not paid real estate taxes on the property since 2014 and that the Bank was entitled to payment for that amount.

The Court finds the Bank's testimony and calculations credible and determines the amount of the Bank's lien is $232,395.21.

## CONCLUSION

For the reasons set forth above, the Court finds that the amount of the Bank's lien is $232,395.21. Based upon that determination, the Court will schedule a hearing at which the Debtor should be prepared to report how he wishes to proceed in this case going forward.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

November 2, 2022  
Burlington, Vermont

*Heather Z Cooper*  
Hon. Heather Z. Cooper  
United States Bankruptcy Judge